Good afternoon. Good afternoon, Your Honor. Just to be sure, do we have on audio Judge Greenberg with us? Judge Greenberg, can you hear me? I can hear you. Okay. And any time you want to pipe in with any question whatsoever, let us know. And we'll make sure at the end we have it for you. Okay. Let me ask you this. Are you speaking in open court now? We are. Yes. Okay. We are in open court. Okay. We have three cases for this afternoon. And the first is In Re Avandia Marketing Sales Practices and Products Liability Litigation, Number 15-2990. Mr. Shapiro and Mr. Connolly. Shapiro or Shapiro? Shapiro. I know that's wrong for this building, and I respond to both. I'm feeling it's Shapiro. It's wrong, but it's true. It is Matthew Shapiro. My partner, Lou Kupperman, is with me representing the appellants in this matter. I have asked to reserve three minutes for rebuttal, and I see that my clock already reflects that. No problem. Go right ahead whenever you're ready. Your Honor, the law offices of Stephen Johnson is obviously lawyers, and so Mr. Johnson obviously appeared, although out of respect for the court and to make his arguments. But what strikes me as I look at this case is that Mr. Johnson didn't have to appear. The law offices and their clients didn't have to appear. They could have taken the position that there was no subject matter jurisdiction. There had been no service. They weren't parties to the case, and they could have not appeared. Presumably. Well, they could have taken that position, I suppose. But then, of course, they would have risked a default judgment and had there been a subject matter jurisdiction found, as there ultimately was. They would have been in a bad posture. But let me ask you just something about some uncontested facts, all right, Mr. Shapiro? Isn't it uncontested that Attorneys Bauman and Roseman have a financial stake in the Gable litigation? I'm not sure if they both still have a financial stake or not, and I'm not counsel in the Gable litigation. I know that there is litigation related to Gable about the fees. I thought it was uncontested that they had a piece of the action in those cases. Your Honor, I think that they testified to that. We objected to the procedure below and did not contest any facts for purposes of this proceeding. Okay. So if you don't contest the facts, then they're uncontested, right? Correct, Your Honor. They're uncontested, yes. All right. Then what is occurring to me is if it's uncontested that people who are on the team have an interest in the Gable litigation, why isn't that all by itself enough to, say, game up in this circumstance? Because, Your Honor, the fact that Mr. Bauman, Rosenbaum, or anyone else might choose voluntarily to pay into the common benefit, the common assessment fund that they are part of and have cooperated with, that's their business. Yeah, but Mr. Johnson chose voluntarily to involve attorneys Bauman, Rosenbaum in the case and make them counsel in this case, right? And they did sign the agreement saying that any recovery that you could take the portion out that relates to them. I believe that's an excellent point, Your Honor. They signed that agreement. And I think particularly if Your Honors look back to the previous case, the Girardi-Keys case, the fact that you had attorneys who signed the agreement I think was incredibly important. The fact that they signed the agreement before Judge Roof entered PTO 70, that the signed agreement was incorporated into PTO 70, that PTO 70 defines covered claims and participating attorneys as either people who are members of the plaintiff's steering committee or people who have signed the agreement. That's the actual language of PTO 70. Could the Johnson firm agree by its conduct that it was bound by that agreement? I don't believe it could, no. I think PTO 70 is quite clear that in order to come within PTO 70 to have covered claims and to have a participating counsel that you need to either be a member of the PSC or you need to have signed the attorney participation agreement. It says that in PTO 70. I didn't understand one thing. Isn't the 7% in part coming out of the recovery to the plaintiffs? It is, Your Honor. The 7% is by definition split 4 and 3%, part to the attorney and part to the clients. Now, did the clients, the injured parties, ever consent to this? Absolutely not, and the record's clear. Not only didn't they consent, there's no reason to think they ever knew about it. And here's what's really shocking to me. There's no evidence of any process on them. When we talk about just service of process, at least as to the law firm, and I don't think this is vapid, but the law firm at least got an email and a mailed copy of the motion, which I think under the federal rules doesn't start anything and can't start anything, but the clients never got anything from anybody. It's mean that if a client had, and I'm just taking a number out of the air, it really doesn't matter, $100,000 recovery, in fact, they would get $93,000. Correct, Your Honor. I mean, part of it would presumably still go to the attorney, but you're right. Now, they'd have to pay a fee out of what they recovered, but their recovery, although said to be $100,000, in effect would be $93,000. That's correct, Your Honor. And importantly, I think in the Girardi-Keys case, there's a footnote in that case which says the Girardi-Keys law firm had agreed that they would pay the client's share. There's no such agreement, no such stipulation or anything like that in this case. In this case, the clients would be paying part of it. No, well, if the court says you're going to pay it because you're in it and if you failed to do what you needed to do with your client, that's on you, right? Isn't that the way it's been handled previously? I mean, we're not bound by the In re Evandia marketing case, which was non-precedential, but in that case, the court looked at it and said, well, we're not getting into that. If you eat the whole thing, you eat it. It's on you as attorneys. You failed to work things out with your clients, you failed to work it out, but that doesn't mean you get the free ride. So maybe that panel got it wrong, but you've got to tell us why they got it wrong. I'm confident that panel could not have gotten it wrong. So why do you think that's not the right approach here? Well, Your Honor, first, if I can respectfully differ, footnote 5 to that previous case says, Gerardi-Keese promised to contribute the entire assessment. I don't know when and how they did that, but the law offices of Stephen Johnson, and that's in footnote 5, the law offices of Stephen Johnson have emphatically not promised to contribute it. And I actually think that's a useful point. When you say they have not promised to contribute it, that's the whole point, right? That's the question we're wrestling with. Is it the case that by attending this MDL plaintiff's meeting, at which it was announced at the beginning, if you're going to stay here and you're going to receive materials, you're going to be agreeing to this. By hiring Rosamund Baum, by actively working with him and using those materials, that Mr. Johnson and his firm, in fact, did agree. They did everything to show they did agree and should be held bound because to find otherwise is to sanction or to countenance free writing. That's the argument we're getting from the other side. So you need to head on, why is it the case, just as a matter of practical, pragmatic addressing how these cases operate, why is it wrong to view his behavior as an acceptance of the PTO side of his conduct? You know, we have a case from 1985. It's Teamsters Local Union 764 versus J.H. Marriott at 770 S. Second, page 40, that says that it's black-letter law. The parties can agree to contracts through their conduct. And he was told about, you know, he was in the meeting up here. He got these two other firms to join with him. They told him about the participation, or he knew about the participation, but he didn't sign it, so he leaves. They told him later on about the participation, and he said he knew about it, but he said, but I haven't signed it. So it sounds like he wants to get the benefits but not the burdens. I think, if I can, I have two answers to that. One would be the specific factual, and one would be on the law. On the specific factual, I think the record, I think, is not as clear as to what would be fair in this case. Number one, the testimony was that everyone who was there was required to sign the agreement.  Yeah, Mr. Johnson also, by the testimony of the process server, who tried to put a subpoena on him in connection with this case, was deliberately avoiding doing anything that would put him in a zone where he would have to comply. Because somebody is told, you need to do this before you leave, and they walk out without doing what they're supposed to do, does that really mean they get to walk without carrying the obligations for the deal that they walked in to get in the first place? Yeah, I actually think, as a matter of law, that is correct. As unpleasant as it may sound. It certainly does sound unpleasant, doesn't it? I walk in, I'm told right at the jump, look, if you want to use these materials, you've got to agree to be bound by this. You sit there, you listen, you take the materials, you use the materials. You hire people who are experienced with using the materials and who are signatories to it. And you prepare to try the cases, and according to the other side, and the district court's findings, you get a bump in your settlement rates. And what you're telling me is, because I walked out without signing, I slipped out the door, legally, you can't touch me. That's the position you're here advocating, right? Your Honor, I think that is a not quite accurate assessment of what happened. I will leave that aside because I think what really matters is that in this case, when this case was up here for the Girardi-Keys case, here's what the plaintiff's steering committee told this court. Girardi was required to pay fees on all of the settled cases only because it was a participating counsel under PTO 70. And it was a participating counsel because its attorneys had served on the PSC and voluntarily signed the participation agreement. Your Honor, back to the point, right? I'm trying to get you to answer. Your position is, your legal position is, he never signed it, so no matter what else he did, he can't be held to have agreed. I think it doesn't matter whether he agreed or not. Because he didn't sign it, he's not within the order. And because he's not within the order, he's not within the district court's subject matter jurisdiction. Because the district court's subject matter jurisdiction, we all know, the district court only, federal courts only have limited subject matter jurisdiction. We all agree, this court agreed in the Shoah-Danko case and the genetically modified Rice case, if you're a stranger to the litigation, there's no subject matter jurisdiction. Right, and the court below responded to that how? What was Judge Roof's response to that? Judge Roof's response was because this court already ruled in Girardi-Keys, therefore Shoah-Danko and genetically modified Rice have already been distinguished, but they haven't been distinguished for purposes of this case. The clients haven't been distinguished for purposes of this case. The shocking lack of process hasn't been distinguished. Judge Roof didn't even deal with the fact that my clients weren't served with anything. Well, when you say weren't served with anything, you're implying that the only way that somebody can be involved in litigation is by the service of a complaint and a summons. Are you denying that an attorney who voluntarily enters into an agreement, knowing that they're going to be bound by a pretrial order affecting a case, is subject to the ancillary jurisdiction of the court? I don't think that the record supports him knowing he was going to be bound by that. Take it as a hypothetical. Let's say it's not an attorney named Johnson. It's some attorney someplace named John Stun. Do whatever you want with it. But as a hypothetical, short of receiving a complaint and a summons, can't an attorney end up subject to the ancillary jurisdiction of the court by behavior and actions that indicate they are acting under a pretrial order entered in a multidistrict litigation? Your Honor, I'm reluctant to answer that because I can't think of every possible hypothetical. But my general answer to that is yes, you can't be dragged before the court without some form of proper service. You can't. They have said that because service was well nigh impossible, the fact that they emailed him was good enough. So let's assume you're right. If he's later served, they have personal jurisdiction over him, right? If he was later served, I would ask what he's going to be served with. Is it going to be something where there are rules that tell me how to respond, that allow me to take discovery, that allow me to answer and counterclaim? One possible way is if he's not willing to be served, then just let the state court deal with it rather than have it dealt with by a federal court. Let Illinois state court deal with it. This is moving the money back right now, isn't it? Yes, I think that's what it should be dealt with in this Illinois state court. It's a state court case with state court claims. There was never federal jurisdiction. Tried with federal court materials, right? It was litigated with federal court materials up to the point of settlement prior to trial. Your Honor, I don't think there's anything in those materials which can be characterized as federal court or state court. Well, they were developed in the context of MDL. Baum and Rosen have all testified to it. But those materials don't create federal court subject matter jurisdiction. That's neither here nor there for the question that I'm asking you about. You've just said it's got to be in the state court because of all these things. But at the end of the day, what you have to answer is, how does Mr. Johnson walk away from his behavior? Now, you've said it's because he never signed something and because they never served him with a complaint. Assume for the sake of discussion that this were a case that was actually in the federal MDL and he never signed anything. Would you say he can't be forced to abide by it? There's no subject matter jurisdiction? In that case, I would say that the district court absolutely had jurisdiction to determine whether or not he could be bound by it. Well, it's always got jurisdiction to determine its jurisdiction. I don't think that the federal court in this case has jurisdiction to determine its jurisdiction. But we're talking now about whether it has jurisdiction to determine whether or not Mr. Johnson voluntarily agreed to something on behalf of both his law firm and his clients. That's putting the rabbit in the hat. Whether Mr. Johnson either voluntarily agreed or agreed in effect by virtue of his conduct. I've cited you a case, and I don't think your argument is strong on subject matter jurisdiction. I think you've got a good argument on personal jurisdiction. Well, I'm glad I got at least one out of two. I think that the question of whether he agreed voluntarily to be bound is one that can't be brought before the district court because he was a stranger to the litigation. That's the whole point with Judge Jordan. He was not a stranger to this litigation. Did he ever see these documents? The trial-in-the-box documents that were... The testimony below is that he did, and we objected to that proceeding but did not contradict it below. The optics aren't good. Your Honor, I think that the issue is... Your Honor is basically saying that we should have fought on the facts below. And our view is that the court below had no jurisdiction to hear that question. And so I will take what those facts are. We don't dispute that Judge Roof intended PTO 70 to apply. What we dispute is whether Judge Roof had authority to create an order. Well, let's go back to the very first question, I think, of Judge Jordan. Bombs agreed that you can take out his portion. Is that correct? He has. There's a dispute as to how many of the clients... That's what's actually being litigated in Illinois, how many of the clients it applies to. But there's no dispute in this case because you didn't dispute it. So his testimony spans unrebutted, right? I actually think his testimony was pretty clear that of the 200 or some odd plaintiffs below, that he represented a couple of them and that there is a dispute as to whether it went to all of them. Was it a bomb or Johnson? I don't remember. Johnson wasn't there. I don't remember which of those it was. And I would be happy to go back and check the record on that for your honors. I thought that Mr. Bomb had said he had a fee interest in all cases and the Gable litigation would receive 75% of the fees for the trials in this set of cases and 10% of fees for the rest of the cases. That's how I thought it came down. Now, maybe I got it wrong, but that's how I understood the record. I apologize. I am confusing what's in the record from what I know as my knowledge, and I don't want to confuse that for the court. All right. Let's hear it from the other side, and then we'll get you back on rebuttal. Thank you, Your Honors. You're welcome. May it please the Court, Sean Connolly on behalf of the Plaintiff Advisory Committee. If I could, I'd like to start with a colloquy that Judge Jordan had with my friend Mr. Shapiro. Can I just ask one? Sure. It was a dumb question. How is it that the Johnson firm gained access to these common benefit materials without signing the agreement? We didn't have a copy of the signed agreement. There was testimony from Mr. Baum and Mr. Rosemond that at that meeting in Los Angeles in 2012, everybody that attended was required to sign that agreement. We did not have a copy. We asked for discovery from Mr. Johnson, but did not get discovery of whether or not he had an agreement. We did not have a copy of the signed agreement. The testimony was, if you want to stay in that meeting and receive the, quote, trial-of-the-box disc, that you have to sign the agreement. And that was made clear by Mr. Baum and Mr. Rosemond. It was also made clear by the e-mail traffic that, in fact, Mr. Johnson had stayed for that entire meeting. His e-mail to Mr. Kiesel, the leader of the Coordinating Council, was that he stayed in the meeting and thanked him for that. And, in fact, the e-mail traffic from Mr. Johnson to Mr. Kiesel in advance of that meeting made clear that he asked, if I cannot attend, can I have somebody else attend in my place? They said, yes, but you'll have to sign a pretrial order. And that made clear that that was a condition of attending that meeting. We did not have a copy of the signed agreement. But when it got lost there in the shuffle, we were not able to produce that. And, in fact, our discovery requested Mr. Johnson were rebuffed, and the district court denied his moot or motion to compel further discovery. But in terms of the – did that address the audience question? This is Judge Greenberg. I had the question I posed to counsel, but part of the money, a good part of the money, was coming out of the individual plaintiffs. And, apparently, as far as I can see, they were totally in dark, in the dark about the whole thing. They never agreed to it. Yes, here's my response to that, Judge Greenberg. And this was dealt with Gerardi. I know it's not precedential, and I have a totally different reading of footnote 5 than my colleague advanced to the court. But the issue there was that if we do show, and I believe the evidence does show, and, in fact, the trial judge so found that Mr. Johnson, along with Mr. Baum and Rosamond, agreed on behalf of their clients to pay that 7 percent assessment, they had the authority to do that. And if they did not have the authority to do that, the Gerardi footnote 5 says that's a matter between them and their clients. That does not excuse them from paying the 7 percent that they agreed to. So I think that's a little bit of a red herring in my colleague's focus on the clients. You're saying it doesn't excuse them from using somebody else's money to pay their obligation. No, I'm not saying that. What I was trying to say in terms of response to the colleague, or initially from Judge Jordan and my colleague, was that this is not a personal judgment. There is no judgment against Mr. Johnson or certainly against any client. This is more in the nature of a res. There was a disputed 7 percent holdback that was held by GSK Defense Counsel, a Philadelphia firm, in Philadelphia. The testimony made that clear, that the res was in Philadelphia. And the dispute was, does GSK need to pay into the abandoned common benefit fund or release it to Mr. Johnson? And I think it's important that this really is much more in the nature of an in rem proceeding, where the disputed res is here in Philadelphia. And what I was trying to say in terms of Judge Jordan's question, well, wouldn't there be a default judgment? I think even less than that, there would be no default at all. It would just be that the direction, and that there was no personal judgment or order rendered against Mr. Johnson, much less against his clients. If you look at page 82 and 83 of the appendix, the order of Judge Roos, it says simply that GSK has held back 7 percent of the res, and they are directed to pay that res, that 700 or anything in which any of those three firms has a fee interest, pay that into the common benefit fund. Mr. Johnson was ordered to do nothing. It was simply his claims, his claims to that res were rejected. And again, I think the issue that he's trying to say, well, there was some kind of judgment against me, that's wrong, much less against his clients. The 7 percent res, the held back money, was ordered and paid into the common benefit fund. That clearly, and there's no dispute. My colleague admitted below, and I didn't hear him say it expressly here, but I think he would admit on rebuttal. There's no dispute that this order was intended to apply to this res. And I'll get into why that is so, but there's no dispute that this was a covered claim under PTO 70. And the argument that this should somehow be litigated in Illinois is a very cynical one. This is quintessentially a federal question. Did this judge have authority to enter that order and then to effectuate it? And that's a question that's properly brought, not in an Illinois state court. This would be a term of federalism on its head. This is a question that needs to be litigated by Judge Roof in the first instance, subject to this court's review. Subject to, don't you have to get personal jurisdiction over the Johnson firm? Well, again, I don't think, I think the fact that it's more in the nature of NREM, it was done by, they clearly had notice and they participated. It was done by email, by overnight service, and they clearly had notice. When has the argument been made previously that this was NREM? Pardon me? I mean, in Girardi, that wasn't the argument, was it? Well, I think, well, the testimony here was that this is a res held in Philadelphia. That's clear in the record, and that was the principal purpose of the testimony of the GSK lawyer, was to say there is a res here, and they said it's 735K. But the actual 7% is actually being held in Illinois, is it not? It is not. No, no. The testimony in the record makes this unequivocally clear, and that was the whole testimony of the GSK lawyer in the proceedings below, is where is this res? It's been ordered held back. It's a Philadelphia trust account by GSK counsel, Pepper Hamilton. And so this res is here in Philadelphia. And to say, and where the res should go is going to be controlled by the interpretation of PTO 70, a federal order for the claimant to say that this somehow should be decided by an Illinois court, a state court, to determine not even the interpretation of PTO 70, because they're not challenging that it was meant to cover this claim, they are challenging that this is beyond the court's authority, the federal district court's authority to order. That is not a question that should be litigated in an Illinois state court. That's a question that should be litigated and was litigated in Judge Ruth in the first instance, and now is being argued here. Well, let me press you on this, because I'm interested in getting the answer to Judge Ambrose's question. Where did you argue before that this was a res, and this is in the nature of an in rem action? Because I've just searched your answering brief for res, and it comes up in the context of present, and presented, and interest, and things like that. It's in the very middle of present. I can't sit down with a presentation of res. Yeah, I can't see any place where you've made the argument that this was a res. Is this just coming to you today? Well, not today, but the facts were established. In terms of the res, that was- Well, the facts may have been established, but we deal with arguments, and we deal with waivers all the time, so I'm wondering how we can hear this argument. I thought your argument was that the order to show cause was a substitute for a summons. Yes, well, I don't think we've argued that it was a summons. I think we refute the notion that it had to be a summons. How do you get personal jurisdiction? I think it's an ongoing order. I would guess, and I can't say this inside the brief, but in the advisory committee notes to Rule 4.1, the Waffen-Schmidt case in the Fifth Circuit, talks about this is different. An order to show cause and an existing order, enforcement of an order, is different than initiating a case and seeking a personal judgment. I think the fact that this is not a personal- If you think there is a contract, and whether it be a contract that's expressly entered into or by someone's actions, he or she has agreed that that contract should be in play, if party A thinks party B is in breach, doesn't it need to file a lawsuit and serve a summons? If it's not a court order, absolutely. If it's simply a private contract, it does. I think when you have a court order, and a court effectually enforcing its own order, is a different magnitude than a private contract, where you're initiating a new case and saying party A is serving party B. But you don't have party A or Johnson having signed this agreement. There's an argument that maybe there's subject matter jurisdiction because, in effect, he agreed by his conduct. But if you think he's in breach, or the firm is in breach, you have to go before the court and get personal jurisdiction over him. My understanding is that he appeared here only for the purpose of contesting the particular assessment, if you will, of these monies against his firm. That would be true if we were seeking a personal judgment. But I think this is not a personal judgment. The order itself is not the nature of a personal judgment. I've quoted A2 and A3 of the order, which doesn't require Johnson to do anything. It requires the defendant, GSK, that is held back 7% in Philadelphia, and the record makes that clear. We mentioned that on page 4 of our brief. We did mention that the money is here in Philadelphia, and the record did make that clear. This was an order to the defendant, GSK, of here's what to do with the money. It was not a personal judgment. That's why I said in terms of default, I think Your Honor's point is absolutely right, but it would not have been a default judgment. It would simply have been his objections would not have been heard. If he wanted to get this money back, his option was to go to court and sue GSK? Is that the assertion? No, I think his option was to come into court and to fight the court and to do what he did, and maybe to try to put on facts, but the facts were undisputed, and the facts were not good for him. But his option was to do what he did. If this were litigated in the Illinois state court, aren't your chances pretty good there? Forget the federalism for the moment. I don't know that they're very good, but I think that's just not a good procedure. What would be litigated there is the question. The lesson is the next time around, make sure before somebody enters or at least leaves the room, that that person signs the agreement. Or make sure you keep a copy of the agreement. I don't want to admit that it wasn't signed because I can't prove that it was. I don't think it's proven that it was not. But that's a lesson, keep better records and keep that agreement. But I think we don't need to go there. I think, Your Honor, we did not cite Judge Becker's case in team suits, but it proves our point. In terms of the judge found, and we relied on that, that there was a implicit agreement. And she found that on page A2 and A3, the order itself, and then A12 and A13. And then for purposes of getting personal jurisdiction, you say that it's a res here, but I'm not aware of the argument being made. Well, the argument being made was one accepted by Girardi. Well, Girardi was the case where they signed the agreement. Well, yes, but I think that is the only distinction between this and Girardi. And there was a summons, and they were served with it, right? No, it was the same. There was no difference on that, and that wasn't raised there. And then my colleague signed me, A258 was Mr. Zarki's testimony that the res is here in Philadelphia. I think that's undisputed. But in terms of jurisdiction, I think that there was, and as Girardi said, that in personal jurisdiction, you can agree and subject yourself to personal jurisdiction by agreeing to perform an obligation and agreeing to do something within the jurisdiction. And he agreed to be bound by pretrial order 70. And this is stronger than Girardi's action because Girardi's agreement to that, his alleged attorney participation agreement, came before PPO 70. But after PPO 70, with knowledge of PPO 70, by his conduct, Is that even necessary? I ask you what I asked Mr. Shapiro right at the start. Miser's, Baum, and Rosenmund are co-counsel in the case, right? They are bound, right? Yes. Does it take any more than that to make them subject to the 7% assessment? It should not, and thank you for leading me in the right direction. It is a covered claim if anybody has a seen interest in it. And it's not just that my share is covered or not. I mean, that would be a way to circumvent the intent of the order. Judge Roof had the authority to protect federal work product. And this was federal work product generated in tens of thousands of hours by the Plaintiff's Steering Committee lawyers. Federal work product, this trial in the box, presented to Baum and Rosenmund that they used to advance the cases and to make them have a return that Mr. Johnson was not happy with before they used that work product. So their interest, either one of them. And that's why the order, if you look at, again, page 8-3, says that the order and the holdback applies to any cases in which it is disjunctive, in which either Baum, Rosenmund, or Johnson has a financial interest. So I think your honest question is that Baum or Rosenmund, enough, their interest alone would do it. So an interest of anybody makes it a covered claim under PTO 70. And that's why I think in terms, and that's why it's not necessary that this be a personal judgment against Mr. Johnson. It was not. It was simply a holdback of any claim in which either Baum, Rosenmund, or Johnson had a financial interest. And he agreed to that. And this is a factual finding of the trial court. He was bound by, he agreed to that, and she said implicitly, I was arguing by attending that meeting and taking the trial in the box. Whether or not there's a signed contract, it was made clear that a condition of that, and this is e-mail traffic documenting that agreement, if you come, you're going to be bound. Now, should there have been a signed agreement? Should we have kept it? I wish we had. But I don't think it matters. I think the implicit agreement is just as good an express one. Have you ever lost one of these agreements? I've never, you know, yeah, I never lost one. I can't, you know, speak of how many they've lost, but it's not here. I mean, it sounds from the facts here, he just didn't want to sign it and didn't sign it and got away with it. Well, the question is, can he get away with it? Can he get away with it? I guess. And then when he associated with Baum and Rosenmund, apart from this court agreement that he entered on that day, I think then they became bound by it, and the entire case became a covered claim. So I think that also separately, apart from his attendance, brings him in there. All right. Thank you. Thank you. Let's hear from Mr. Shapiro. In Girardi-Keese, Your Honors, agreed that Showa-Danko and genetically modified rights, this Court agreed that those were good law, and we just heard two arguments that would require essentially not reversing them from a different circuit, but distinguishing going against Showa-Danko and genetically modified rights. Number one, they both say explicitly that equity doesn't matter. They say it doesn't matter if you had the materials, and that's part of the argument that's being made today. If you had the materials, then it creates subject matter jurisdiction. Those cases decide that that's... It's not a question of whether he just had them. The question is, did by his behavior... Well, there's two... I see this as having two separate questions. The first question, which I still would like to hear an answer from you on, is the one I asked you right from the start. Baum and Roseman, nobody disagrees that they're bound. PTO 70, by its terms, seems to say that if a lawyer in the case is bound, then those are covered claims. So whether Mr. Johnson signed or didn't sign, ever intended to agree or didn't ever intend to agree, his co-counsel are in, those claims are covered, the holdback is good. That's one argument, and I'd love to hear your answer to it. I don't agree that PTO 70 says that, and I don't agree that Baum and Roseman were bound by that. Then tell me... Well, that's two things. One is you're saying you don't agree they were bound by it. They say they were bound by it. They testify they were bound by it. Sure, because it was in their interest. And you didn't dispute it. So you can't have it both ways. You can't come in here and say, Yeah, we didn't dispute a thing below, but then keep disputing things. Baum and Roseman, on the record, said we're bound. Plus local counsel. So they're bound. They say they're bound. Looks like that's that. Now, go to PTO 70 and explain to me why that does not mean that these cases are, quote, covered claims. Because covered claims are defined as claims where attorneys are members of the plaintiffs' steering committee or have signed the attorney participation amendment. And Baum and Roseman signed. But Mr. Johnson didn't. I'm not... Just as a matter of logic, I'm not getting you. And I apologize. I don't mean to be obtuse, Mr. Shapiro. If you've got three lawyers on a case and any one of the three is bound, then doesn't that, by the definition set out in PTO 70, mean those are covered claims? No, I think that means that Baum and Roseman... I apologize. I'm getting their names wrong. I think that means they have to pay the percentage out of whatever the gable court ultimately determines is their representation in those cases. Where are you getting this? Why do you think that? This is what PTO 70 incorporates by reference. It says this agreement applies to each and every claim, case, or action arising from the use of a VANDIA in which the participating counsel has a financial interest whether the claim, case, or action is currently filed in state or federal court or is unfiled or is on a tolling agreement. That is incorporated into PTO 70. Any case, claim, or action in which an attorney, not all attorneys, but in which some participating counsel has a financial interest. If you've got a lawyer with a financial interest in the case who is bound to it, how is that outside of PTO 70? Just as a matter of English. Oh, I apologize. If the question is is it outside of PTO 70, I don't believe it's outside of PTO 70. I believe it's outside of the district court's subject matter jurisdiction. I don't believe the district court has the power to reach Mr. Johnson's piece of those cases. Well, that's the whole point is you're asserting that this is Mr. Johnson's, quote, piece. The other side and the district court are saying it's not Mr. Johnson's piece. This is an assessment against a settlement, and an attorney who represented the claimants is bound, and therefore that whole back applies. It's not a question of whether Mr. Johnson's got a piece or he doesn't have a piece. The premise you're operating from is the one I'm struggling with, and I'm still not quite understanding it. What makes you think Mr. Johnson's got a, quote, piece, unquote? I think if I'm understanding your question correctly, the answer is that what I believe is that who has that piece and where those pieces are, if Mr. Johnson's going to be part of the dispute resolution that resolves that question, it has to be in the state court. Well, the other side is saying we don't care whether Mr. Johnson's involved or not. He can come in and argue about it, or he can't. If he doesn't want to, he doesn't have to, because it's not his, quote, piece. That's the point that you need to meet. And, again, I'll go back to Showa Danko and genetically modified rice, which this court has embraced already, which say you can't say that it's on Mr. Johnson to come into this court because Mr. Johnson is a stranger to this court. Mr. Johnson hasn't been in front of this court. He's not a party to it. He's not counsel to it. His clients aren't parties. Assuming that's true, that assumes that he's got an ownership interest in this money. Where does he get it? If he has none, then he has none. But where does he get the ownership interest in this money? If he's… In other words, he gets to keep the money and not have to turn it over. He doesn't ever have it. It's with Pepper Hamilton. I actually agree, and I think that's one of the most fascinating parts of the argument that I just heard, the concept that this race is in Philadelphia. We'll get to that. Okay. Where does he get the right to use the documents and not have to pay for the benefit of those documents? Genetically Modified Race and Sherwood Danko say explicitly that having the documents from a federal MDL does not mean you're part of the MDL and does not mean you have to pay a common benefit assessment. They say it explicitly. Because? Because the federal district court doesn't have jurisdiction over strangers to the litigation. But the question isn't jurisdiction over the strangers. It's a question of jurisdiction over a pot of money, isn't it? I think that's what was just argued here a moment ago. But isn't that true, though? I mean, he's trying to get the money, but the pot of money is physically within the territory of the court even. Your Honor, thank you for asking that because that's where I wanted to go a minute ago because I could not disagree more with that. That pot of money is a state court settlement. There's no dispute. Well, how about we say where it is? It's in Philadelphia, but it's a state court settlement pot. It's a state court settlement. It's money negotiated in state court, authorized and overseen by a state court judge. Who's got it? GlaxoSmithKline has it, but because they're a defendant in state court cases, the fact that GlaxoSmithKline Although technically, I guess Pepper Hamilton has it in trust, right? Yes, but the fact that a defendant is a defendant in both federal court and state court simultaneously doesn't mean that the federal court gets jurisdiction over its money and its settlement funds in the state court. That would turn federalism into I think the argument is if you lose on subject matter jurisdiction, personal jurisdiction, a way around it in order not to serve him is to say that there's jurisdiction over the race, which is the money which happens to be here in Philadelphia in trust at Pepper Hamilton. And so Pepper Hamilton will not turn additional monies over to Mr. Johnson above or they will hold back the portion that he would owe from that 7%. If the point is that there is personal jurisdiction, if that's the sole point, that there's personal jurisdiction over Pepper Hamilton in Philadelphia, I agree with that entirely. But how does that get you subject matter jurisdiction? And what is the possible procedure that we're following to mitigate that? My question was, assuming you lose on subject matter jurisdiction, assume that the ruling is that by his conduct, he agreed to that. Then the question becomes, how do you get personal jurisdiction over him? Don't really have to get personal jurisdiction over him because the jurisdiction of the district court in the MDL is over the monies that are in this particular account at Pepper Hamilton. Again, I disagree with that. The jurisdiction of the MDL is over the monies for federal settlements. There's no jurisdiction over the monies for state court settlements. Can't you keep the separation between the subject matter jurisdiction and the personal jurisdiction going, Mr. Shapiro? Just for the sake of the discussion, you don't have to. That's fine. But I think what you've been asked now repeatedly is, leave the subject matter jurisdiction question to the side and just answer the question about personal jurisdiction. If it's true that we're talking about a pot of money in Philadelphia, then who cares where Mr. Johnson is if the personal jurisdiction issue is, we've got the money. Then what's the personal jurisdiction response to that? Then I think that is the equivalent of saying the federal court below has personal jurisdiction over every cent of Klaxosmith-Klein's, every cent of Pepper Hamilton's. I don't know where you draw that line, then, is what I'm struggling with. How about you draw the line at where they put the line, which is we've got to hold back a 7%. Again, what Your Honor is talking about is money that belongs not even to Mr. Johnson, but to Mr. Johnson's clients. Who says it belongs to them, right? You're saying it belongs to them. They're saying it doesn't. The district court says it doesn't. And you're saying, oh, it does. And usually the way we resolve those things is somebody comes into court and says, that's my money. They don't say, hey, that's my money, but you don't have a subject matter of personal jurisdiction, give it to me anyway, which is what it sounds like your client is saying. I think that there's no dispute that it's the client's money. The question is how much of the client's. Absolutely disputed, Mr. Shapiro. That's what we've spent the last half hour arguing about. You're saying there's no dispute that it's their money. It is disputed. The federal district court said this is money which, by the terms of an existing pretrial order, belongs to the common fund because it's based on the trial in a box. It was generated by the joint efforts of people whom these clients benefited from. So we've just got a little bit of a cart and horse issue going here, and I'm not sure we're going to resolve it by further discussion. I guess I would just say respectfully, I think you've gone a step further. You're saying that it's subject to the order and, therefore, it's part of the common benefit, but it only gets to the order by being a settlement. It only gets into the realm of this case by being part of the state court settlement, and the state court settlement is money that goes to whatever clients. And then the question is, well, of the money going to the clients, how much of it goes to the lawyers and which lawyers? So it's only once you've said that it's a settlement being paid to the clients that you even can ask the question of which attorneys are entitled to any piece of it. How much is actually in play here for the Johnson firm? You know, I'm glad you asked that question because only lawyers and judges could have had this argument with no indication of what's actually involved. Amen. I'm sitting here wondering, what are we arguing about? Unfortunately, I think I can't answer that because it's subject to the gable litigation, which cases we're actually talking about and how much money it actually is. What's the maximum amount? I don't know the maximum amount. How much was the holdback for the attorneys? I want to make sure I get that right, Your Honor. Yeah. I want to say $750,000. $735,000? That's the total holdback. That's the holdback, yes. Is that 7% or 4%? That's 7%. Okay. All righty. Thank you. I don't have any more questions. Nor do I. Thank you very much. Thank you to both counsel. We'll take the matter under advisement and call our second case.